JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Anthony Bouyer appeals from his convictions for aggravated robbery and felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} On November 5, 2002, defendant was indicted for aggravated robbery and felonious assault in connection with an attack which allegedly occurred in the area of Prospect and East 13th Street in Cleveland Defendant pleaded not guilty and moved to suppress eyewitness identification testimony on the basis that the identification was unreliable and the result of suggestive police procedures.
 {¶ 3} The trial court held a hearing on the motion to suppress on April 8, 2002. The state presented the testimony of Cleveland Police Det. Dale Moran and Lauren Wolf, the victim of the attack. Det. Moran testified that he spoke with Wolf, and obtained a description of the assailant. His partner, Det. Maruniak, then prepared a lineup of six men who fit the general description and appeared to be around the same age as the suspect. According to Det. Moran, all of the men had facial hair or stubble, appeared to be graying and unkempt, and were 35 to 40 years-old. Det. Moran further stated that Wolf immediately identified defendant, who was in position four of the lineup, as her attacker.
 {¶ 4} On cross-examination, Det. Moran admitted that the men were not similar in height and weight and that one was larger than the others. Det. Moran also admitted that defendant has a scar above his right eye and a mark on his lip, and that Wolf did not specifically mention that her assailant had facial scars when she provided a description to the police.
 {¶ 5} Lauren Wolf testified that she was beaten and robbed on September 21, 2002. Approximately two weeks later, the police asked her to come to the Justice Center to view a lineup. According to Wolf, as soon as the lights were turned on in the lineup room, she identified the man who attacked her. She told Det. Moran that defendant was her assailant and also noted her identification on a police lineup identification form.
 {¶ 6} Wolf explained that the attacker's face had become ingrained in her mind when the attack took place. He was very close to her, nothing obstructed her view of him, and the attack occurred in the morning. Wolf again identified defendant in court and stated that there was absolutely no doubt in her mind that he was the man who had attacked her.
 {¶ 7} The trial court subsequently determined that the men in the lineup were substantially similar in appearance, that the lineup was not unduly suggestive, that the police had done nothing to influence Wolf's identification of defendant, and that Wolf's identification was reliable. The court therefore denied the motion[1] and the case was tried to a jury on May 8, 2003.
 {¶ 8} For its case, the state presented the testimony of Wolf, Tracy Felder, Felton Mathis, Rick Maruniak, and Det. Moran.
 {¶ 9} Lauren Wolf testified that she had been a partner at an international accounting firm and that she chaired the board of directors of "Dress for Success," a program that assists women who are making the transition from welfare to work by giving them appropriate interview clothing and provides further assistance once they have obtained employment. Shortly after 9:00 a.m., on Saturday, September 21, 2002, she drove downtown to attend a program for women who had recently obtained employment.
 {¶ 10} Wolf pulled into an unattended lot located at East 13th Street and Prospect, and backed into the second parking space. She gathered her car key and purse and, as she got out of the car, a man approached from the rear of her car, pushed her back into the car, and forced her down across the front seat. Wolf testified that she could clearly see the man's face and that nothing obstructed her view of him. Defendant repeatedly punched her in the face, eye, and upper body, then put his hand over her mouth to keep her from screaming. He struck her between ten and fifteen times and said, "I'm sick. I need money." Wolf threw two one hundred dollar bills that she had just received as a wedding present at defendant. He then struck her sharply in the eye, threw her car key and fled toward Huron Road. Wolf went to the office of Dress for Success and her friends called the police and notified her husband
 {¶ 11} Wolf identified defendant as her assailant and said that she had "absolutely no doubt" that he was the man who had robbed and beaten her and that the incident was ingrained in her mind. She further testified that, approximately two weeks later, she identified defendant from a six-man lineup conducted by Det. Dale Moran and Lt. Michael Baumiller at the Justice Center.
 {¶ 12} Wolf testified that the attack left her badly bruised, her left eye was swollen, and her lip was cut. She was given pain killers and Valium. Wolf stated that she was bruised for many weeks after this incident. She also sought treatment with a psychologist who in turn referred her to a psychiatrist. She stated that she has been taking anti-depressant medication since the incident and is suffering from post-traumatic stress disorder. The attack has impaired her ability to perform her work responsibilities, and she has left her job in order to avoid traveling to the downtown area.
 {¶ 13} On cross-examination, Wolf admitted that she did not note any scars or other facial marks when she provided police with a description of defendant. She did not recall if she had bitten the attacker while he had his hand clasped over her mouth, but she stated that she attempted to do so.
 {¶ 14} Tracy Felder testified that she is employed by Dress for Success, which is located at 1303 Prospect Avenue. She arrived at Dress for Success at 9:00 a.m. on Saturday, September 21, 2002, for a meeting which Wolf was also to attend. Wolf arrived screaming that she had been beaten and mugged, and asking for help. According to Felder, she was bruised, shaking, and bleeding from the mouth. Felder and another woman assisted Wolf in calling the police and also called Wolf's husband
 {¶ 15} After the police arrived, Felder and one of the officers found the key to Wolf's car in the parking lot adjacent to their building.
 {¶ 16} Officer Felton Mathis testified that he was on routine patrol when he received a call about this incident. Because the victim was in a position of safety when the call was made, Felton toured the area for suspects fitting the description that Wolf had provided, but was unsuccessful. Officer Mathis then spoke with Wolf and observed that she was badly shaken up and had multiple contusions and abrasions.
 {¶ 17} On cross-examination, Officer Mathis stated that the key to Wolf's car had not been fingerprinted because it was made of a coarse plastic which would not have yielded a print.
 {¶ 18} Det. Rick Maruniak testified that he, Det. Moran and Lt. Baumiller investigated this matter and conducted a lineup at the Justice Center on October 4, 2002. After Wolf identified defendant, Det. Maruniak read defendant his Miranda rights and interviewed him. Defendant did not look well, and Det. Maruniak asked if he was feeling okay. According to Maruniak, defendant stated that he was sick, and had a $200 per day crack habit.
 {¶ 19} Det. Moran testified that he showed Wolf photo arrays on October 2, 2002, but she indicated that her assailant was not in any of the eighteen photographs he showed her. The next day, he asked her to come to the Justice Center to view a lineup, and she immediately identified defendant from a group of six men.
 {¶ 20} Det. Moran admitted that Wolf did not mention that her assailant had scars or distinctive marks. He also acknowledged that Wolf thought that she might have bitten her attacker on the hand but he did not check whether defendant's hands had been injured.
 {¶ 21} The state subsequently rested its case, and the defense moved for acquittal of the charges. The trial court denied the motion and the defense also rested. Defendant was subsequently convicted of both offenses. He later pled guilty to unrelated charges in Case No. 430330, and the trial court held a sentencing hearing on both matters on June 6, 2003. At this hearing, the trial court determined that imprisonment was consistent with the purposes of R.C. 2929.11. The court then sentenced defendant to a five-year term of incarceration on the aggravated robbery charge and a two year term on the felonious assault charge, and ordered the terms to be served consecutively.[2] Defendant now appeals and assigns three errors for our review.
 {¶ 22} Defendant's first assignment of error states:
 {¶ 23} "The trial court erred in denying appellant's motion for acquittal when the state failed to present sufficient evidence that appellant committed this crime."
 {¶ 24} Within this assignment of error, defendant argues that the victim of the offense incorrectly identified him as her assailant and could not have gotten a clear view of the assailant because he grabbed her from behind then punched her in the face, ostensibly impairing her ability to view her attacker. He also complains that neither her key nor her car were fingerprinted.
 {¶ 25} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v.Thompkins (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 26} The offense of aggravated robbery is defined by R.C.2911.01(A)(3), which provides that no person, in attempting or committing a theft offense, shall inflict, or attempt to inflict, serious physical harm on another. As defined in R.C. 2901.01(A), "serious physical harm" is any of the following:
 {¶ 27} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 28} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 29} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 30} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 31} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 32} The essential elements of felonious assault are knowingly causing serious physical harm to another. R.C.2903.11(A)(1).
 {¶ 33} In this matter, the state presented evidence which established that defendant grabbed Wolf as she attempted to exit her car, then pushed her down across the front seat. Wolf testified that defendant's face was plainly visible to her, that her view was unobstructed, and that she clearly saw his face. She repeatedly explained that the incident had been "ingrained in her memory" and that she was absolutely certain that defendant was her attacker. In addition, Wolf testified that defendant repeatedly struck her, demanded money, and continued to assault her after she threw money at him. As a result of the incident, she suffered bruising which lasted for many weeks, and is obtaining psychological and psychiatric treatment to cope with post-traumatic stress due to the attack. She has also changed jobs so that she will not have to travel to the downtown area. Viewing the foregoing evidence in a light most favorable to the prosecution, any rational trier of fact could have found that defendant inflicted serious physical harm upon Wolf, and that he had also knowingly inflicted serious physical harm to Wolf. Because any rational trier of fact could have found that the essential elements of aggravated robbery and felonious assault were proven beyond a reasonable doubt, this assignment of error is without merit.
 {¶ 34} Defendant's second assignment of error states:
 {¶ 35} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 36} Defendant next asserts that the jury lost its way in convicting him of the charges set forth in the indictment. He complains that the victim could not provide a reliable identification, there was no physical evidence linking him to the crime, and he was identified from a lineup two weeks after the incident.
 {¶ 37} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts, in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Tibbs v. Florida (1982),457 U.S. 31, 38, 42, 72 L.Ed.2d 652, 102 S.Ct. 2211. AccordState v. Otten (1986), 33 Ohio App.3d 339, 340,515 N.E.2d 1009. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra.
 {¶ 38} In this matter, after reviewing the entire record, and weighing the evidence and all reasonable inferences, we are unable to conclude that the jury lost its way and created a manifest miscarriage of justice in convicting defendant of the offenses charged in the indictment. The victim consistently identified defendant as her assailant at all key proceedings, and testified that she was absolutely certain and that the incident had been imprinted in her memory. Tracy Felder and Officer Felton Mathis corroborated that the woman was injured and shaken, and that her key had been recovered from the parking lot. Det. Maruniak testified that defendant looked ill. Although the defense questioned why Wolf had not observed a scar on defendant's face, this fact does not render the testimony unreliable. In short, the defense presented nothing from which we can conclude that the jury lost its way or that the evidence clearly weighs in favor of reversal. The verdict was not against the manifest weight of the evidence. The second assignment of error is without merit.
 {¶ 39} Defendant's third assignment of error states:
 {¶ 40} "The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14(E)(4)."
 {¶ 41} Within this assignment of error, defendant complains that there is no indication that the trial court first considered imposing concurrent sentences then imposed consecutive sentences after following the statutorily mandated criteria.
 {¶ 42} When a court imposes consecutive sentences, it must follow R.C. 2929.14(E)(4) and 2929.19(B)(2)(c).
 {¶ 43} R.C. 2929.14(E)(4) governs the imposition of consecutive sentences. It provides that a court may impose consecutive sentences only when it concludes that the sentence is: (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the following applies: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
 {¶ 44} R.C. 2929.19(B)(2) provides that:
 {¶ 45} "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 46} "* * *
 {¶ 47} "(c) If it imposes consecutive sentences under section2929.12 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 48} "Reasons are different from findings. Findings are the specific criteria enumerated in [R.C. 2929.14(E)(4)] which are necessary to justify [consecutive] sentences; reasons are the trial court's bases for its findings * * *." State v. Anderson,146 Ohio App.3d 427, 437, 439, 2001-Ohio-4297, 766 N.E.2d 1005. Moreover, the court must orally make its findings and state its reasons on the record at the sentencing hearing. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at P. 21,793 N.E.2d 473. Failure to sufficiently state these reasons on the record constitutes reversible error. Id.; State v. Gary (2001),141 Ohio App.3d 194, 196-198, 750 N.E.2d 640, citing State v.Albert (1997), 124 Ohio App.3d 225, 705 N.E.2d 1274.
 {¶ 49} At the sentencing hearing conducted in this matter, the trial court noted that defendant had an extensive criminal history "dating a couple of decades with many convictions and he has been sent to the penitentiary on a number of occasions." (Tr. 433). The court further noted that defendant had a previous robbery conviction, that he has chronic schizophrenia and has a history of drug abuse. The court found that defendant presents a risk to the community, that the nature of the offense, the manner of the assault, and the harm done to Wolf justified consecutive sentences as an appropriate measure to protect the public. (Tr. 448). In short, the court's remarks clearly indicate that it considered that defendant had an extensive criminal history which involved numerous offenses and found that consecutive sentences: 1) were necessary to protect the public and not disproportionate to the seriousness of defendant's conduct, and that consecutive sentences were necessary due to the danger which defendant posed to the public. The trial court did not err in imposing consecutive sentences.
 {¶ 50} The third assignment of error is without merit.
 {¶ 51} Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and McMonagle, J., concur.
[1] This case was previously assigned to Judge Stuart Friedman who likewise denied the motion to suppress the eyewitness identification and determined that the identification was reliable.
[2] The court further ordered this sentence to be served concurrently with defendant's sentence in a separate matter, Case No. 430330.